Citimortgage, Inc. v Lofria (2021 NY Slip Op 01026)





Citimortgage, Inc. v Lofria


2021 NY Slip Op 01026


Decided on February 17, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 17, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, A.P.J.
BETSY BARROS
FRANCESCA E. CONNOLLY
PAUL WOOTEN, JJ.


2018-06414 
2018-06415
 (Index No. 20878/12)

[*1]Citimortgage, Inc., respondent,
v
Frank Lofria, appellant, et al., defendants.


Beth E. Goldman, New York, NY (Noelle F. Eberts of counsel), for appellant.
Akerman LLP, New York, NY (Jordan M. Smith of counsel), for respondent.



DECISION & ORDER
In an action to foreclose a mortgage, the defendant Frank Lofria appeals from two orders of the Supreme Court, Suffolk County (Howard H. Heckman, Jr., J.), both dated March 5, 2018. The first order, insofar as appealed from, granted those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against that defendant, to strike that defendant's answer, and for an order of reference, and denied those branches of that defendant's cross motion which were to dismiss the complaint insofar as asserted against him for lack of standing or, alternatively, pursuant to CPLR 3408(f) to impose a sanction upon the plaintiff for its failure to negotiate in good faith. The second order, insofar as appealed from, granted those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against the defendant Frank Lofria, to strike that defendant's answer, and for an order of reference, and appointed a referee to compute the amount due to the plaintiff.
ORDERED that the orders are reversed insofar as appealed from, on the law, with costs, those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against the defendant Frank Lofria, to strike his answer, and for an order of reference are denied, and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings consistent herewith.
In 2012, the plaintiff, Citimortgage, Inc., commenced this action to foreclose a mortgage, alleging, inter alia, that the defendant Frank Lofria (hereinafter the defendant) had defaulted under the terms of the mortgage agreement and note by failing to make the mortgage payment due November 1, 2011, and all payments due thereafter. The plaintiff moved, among other things, for summary judgment on the complaint insofar as asserted against the defendant, to strike the defendant's answer, and for an order of reference, claiming that the subject loan was owned by Federal Home Loan Bank of Chicago (hereinafter FHLBC), and serviced by the plaintiff. The defendant cross-moved, inter alia, to dismiss the complaint insofar as asserted against him for lack of standing, or, alternatively, pursuant to CPLR 3408(f) to impose a sanction upon the plaintiff for its failure to negotiate in good faith. The Supreme Court granted the plaintiff's motion and denied the defendant's cross motion. The defendant appeals.
Where, as here, a plaintiff's standing to commence a foreclosure action is placed in issue by a defendant, the plaintiff must establish its standing as part of its prima facie case (see U.S. Bank N.A. v Seeley, 177 AD3d 933, 934-935). A plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note, either by physical delivery or execution of a written assignment prior to the commencement of the action (see Aurora Loan Servs., LLC v Taylor, 25 NY3d 355, 361-362; Marchai Props., L.P. v Fu, 171 AD3d 722, 723-724).
Here, the plaintiff failed to establish its prima facie entitlement to judgment as a matter of law. The plaintiff was not in possession of the note at the time of commencement of the action. Further, the plaintiff failed to submit evidence establishing, prima facie, that it was authorized to act on behalf of FHLBC to commence the foreclosure action, since the plaintiff did not submit any power of attorney, servicing agreement, or other agreement authorizing the plaintiff to commence this action (see US Bank N.A. v Cusati, 185 AD3d 870, 872). Moreover, the affidavits relied upon by the plaintiff contained only conclusory assertions that the plaintiff was the loan servicer, without asserting the existence of any agreement delegating to the plaintiff the authority to commence this action on FHLBC's behalf in 2012. Consequently, the Supreme Court should have denied those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against the defendant, to strike the defendant's answer, and for an order of reference, without regard to the sufficiency of the defendant's opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
Furthermore, under the circumstances presented, the Supreme Court should have ordered a hearing to determine whether the plaintiff met its obligation to negotiate in good faith pursuant to CPLR 3408(f). CPLR 3408(f) requires the parties to a residential foreclosure action to attend settlement conferences at an early stage of the litigation, at which they must "negotiate in good faith to reach a mutually agreeable resolution." Among other things, a failure "[to follow] HAMP regulations and guidelines . . . constitutes a failure to negotiate in good faith pursuant to CPLR 3408(f)" (U.S. Bank N.A. v Smith, 123 AD3d 914, 917; see Onewest Bank, FSB v Colace, 130 AD3d 994, 996).
Here, the defendant's first two applications for a loan modification were denied based on an investor's restriction that did not permit consideration of "self-employed income that has been received for less than 2 (two) years, for qualifying purposes." Since the bulk of the defendant's income for 2012 was from self-employment, the amount which could be considered, without proof of self-employment income in 2010 and 2011, was "insufficient to offer an affordable payment solution."
Section 6.5 of the federal Home Affordable Modification Program (hereinafter HAMP) Handbook provides that "[i]f [a] servicer is subject to restrictions that make it unfeasible to complete the modification waterfall steps," the servicer must maintain evidence showing "that the servicer made a reasonable effort to seek a waiver from the investor and whether that waiver was approved or denied" (Making Home Affordable Program, Handbook for Servicers of Non-GSE Mortgages, version 4.4, ch 2, § 6.5 at 117 [March 3, 2014], available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_44.pdf [Prohibitions on Modification Waterfall Steps]). The defendant's attorney made numerous requests, in letters and emails, that the plaintiff provide evidence that it had requested from the investor a waiver of its self-employment income restriction.
Here, there is no evidence that the plaintiff attempted to obtain a waiver of the investor's self-employment restriction, which, according to the plaintiff's own denial letter, was the reason for its denial of the defendant's first and second loan modification applications. Nor does the plaintiff address this issue on appeal, except to argue that "[s]ervicers do not violate CPLR 3408 when they follow investor guidelines," and that it "had no obligation to consider self-employment income where investor rules direct it to disregard such income as unreliable." Yet the plaintiff was only required to show that it "made a reasonable effort to seek a waiver from the investor and whether that waiver was approved or denied" (Making Home Affordable Program, Handbook for [*2]Servicers of Non-GSE Mortgages, version 4.4, ch 2, § 6.5 at 117 [emphasis added]), not that it succeeded in obtaining a waiver.
Since the plaintiff failed to demonstrate that it followed HAMP regulations and guidelines, i.e., that it made any effort at all to seek a waiver from the investor as to the restriction which made it unfeasible to complete the modification waterfall steps, it failed to establish that it negotiated in good faith pursuant to CPLR 3408(f) (see U.S. Bank N.A. v Smith, 123 AD3d at 917; cf. HSBC Bank USA, N.A. v Sadeque-Iqbal, 177 AD3d 598, 600).
The plaintiff's contention that the loan modification applications were properly denied based upon a discrepancy between the defendant's records of his income in 2012 and the tax transcripts provided by the IRS are unavailing, as that issue was not raised until after the first two applications were denied based on the investor's restriction.
Since the defendant's submissions raise a factual issue as to whether the plaintiff failed to negotiate in good faith and deprived him of a meaningful opportunity to resolve this action through loan modification or other potential workout options (see CPLR 3408[a], [f]), the Supreme Court should have held a hearing to determine this issue before deciding that branch of the defendant's cross motion which was to dismiss the complaint insofar as asserted against him (see U.S. Bank N.A. v Fisher, 169 AD3d 1089, 1092-1093; Onewest Bank, FSB v Colace, 130 AD3d at 996). Accordingly, we remit the matter to the Supreme Court, Suffolk County, for a hearing to determine whether the plaintiff met its obligation to negotiate in good faith pursuant to CPLR 3408(f) and, if it did not, to impose an appropriate remedy (see CPLR 3408[j]; U.S. Bank N.A. v Fisher, 169 AD3d at 1093).
MASTRO, A.P.J., BARROS, CONNOLLY and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court